IN THE DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| Kathryn Ervin, on behalf of herself and other members of the putative class,<br><br>      Plaintiff,<br><br>v.<br><br>TD Ameritrade, Inc.,<br><br>TD Ameritrade Clearing, Inc.,<br><br>      and<br><br>TD Ameritrade Holdings Corp.<br><br>      Defendants. | Case No. 20-CV-0266-BP |

**UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND
SUGGESTIONS IN SUPPORT**

BARTLE & MARCUS LLC

David L. Marcus, MO Bar #47846
116 W. 47th Street, Suite 200
Kansas City, MO 64112
Telephone: 816.256.4699
Fax: 816.222.0534
Dmarcus@bmlawkc.com

LAW OFFICE OF JARED A. ROSE

Jared A. Rose, MO Bar #60128
919 West 47th Street
Kansas City, MO 64112
Telephone: 816.221.4335
Fax: 816.873.5406
jared@roselawkc.com

*ATTORNEYS FOR PLAINTIFF*

# TABLE OF CONTENTS

I.      Procedural History and Settlement Overview .................................................. 1

II.     The Proposed Settlement ................................................................................. 5

III.    The Legal Standard .......................................................................................... 6

IV.     The Settlement Satisfies Rule 23(e) ................................................................ 7

      a.   The Class Representative and Class Counsel have adequately

          represented the Class ........................................................................... 8

      b.   The settlement was negotiated at arm's length ................................... 9

      c.   The relief provided for the Class is adequate ..................................... 9

          1.   The costs, risks, and delay of trial and appeal ........................ 10

          2.   The effectiveness of the proposed method of distributing

              relief to the class ..................................................................... 11

          3.   The proposed attorneys' fees ................................................... 12

          4.   The proposal treats class members equitably ........................... 14

      d.   The experience and views of counsel ................................................. 15

V.      Conclusion ..................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Bellows v. NCO Fin. Sys., Inc.,*
No. 3:07-cv-0413, 2008 WL 5458986 (S.D.Cal. Dec. 10, 2008) ............................ 6

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ................................................................................ 12

*Cohn v. Nelson,*
375 F.Supp.2d 844 (E.D.Mo. 2005) ................................................................ 6

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ................................................................................ 12

*Huyer v. Buckley,*
849 F.3d 395 (8th Cir. 2017) ...................................................................... 13

*In re BankAmerica Corp. Securities Litig.,*
228 F.Supp.2d 1061 (E.D.Mo. 2002) .............................................................. 13

*In re BankAmerica Corp. Securities Litig.,*
210 F.R.D. 694 (E.D.Mo. 2002) ................................................................... 15

*In re Charter Communications, Inc. Securities Litig.,*
No. MDL1506; 02-1186; 2005 WL 4045741 (E.D.Mo. Jun. 30, 2005) ................ 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,*
55 F.3d 502 (8th Cir. 2015) ......................................................................... 6

*In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.,*
851 F.Supp.2d 1040 (S.D.Tex. 2012) ............................................................. 11

*In re Indep. Energy Holdings PLC Sec. Litig.,*
302 F.Supp.2d 180 (S.D.N.Y. 2003) .............................................................. 12

*In re Lifetime Fitness, Inc., Telephone Consumer Protection Act Litigation*
*v. Life Time Fitness, Inc.,*
847 F.3d 619 (8th Cir. 2017) ....................................................................... 14

*In re Serzone Products Liability Litigation,*
231 F.R.D. 221 (S.D.W.Va. 2005) ................................................................ 11

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.,*
716 F.3d 1057 (8th Cir. 2013) ...................................................................... 6

*In re U.S. Bancorp. Litig.,*
    291 F.3d 1035 (8th Cir. 2002) ............................................................... 13

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,*
    364 F.Supp.2d 980 (D. Minn. 2005) ................................................. 12, 13

*Johnson v. Comerica Mortg. Corp.,*
    83 F.3d 241 (8th Cir. 1996) ................................................................. 13

*Komoroski v. Utility Service Partners Private Label, Inc.,*
    No. 4:16-cv-00294-DGK, 2017 WL 3261030 (W.D.Mo. Jul. 31, 2017) ................. 7

*Little Rock Sch. Dist. V. Pulaski County Special Sch. District No. 1,*
    921 F.2d 1371 (8th Cir. 1990) ................................................................ 6

*Marcus v. Kansas,*
    209 F.Supp.2d 1179 (D.Kan. 2002) ......................................................... 9

*Marshall v. Nat'l Football League,*
    787 F.3d 502 (8th Cir. 2015) ................................................................. 6

*Nieberding v. Barrette Outdoor Living, Inc.,*
    2015 WL 1645798 (D.Kan. 2015) ............................................................ 7

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ........................................................... 6, 13

*Sanderson v. Unilever Supply Chain, Inc.,*
    10-cv-00775-FJG, 2011 WL 5822413 (W.D.Mo. Nov. 16, 2011) ................... 15

*Stephens v. U.S. Airways Group, Inc.,*
    102 F.Supp.3d 222 (W.D.Mo. 2011) ........................................................ 6

*Tussey v. ABB, Inc.,*
    No. 06-CV-04305-NKL, 2019 WL 3859763 ............................................. 13

*Varacallo v. Mass. Mut. Life Ins. Co.,*
    226 F.R.D. 207 (D.N.J. 2005) .............................................................. 12

*Vogt v. State Farm Life Ins. Co.,*
    2021 WL 247958 (W.D.Mo. Jan. 25, 2021) .............................................. 13

*Yarrington v. Solvay Pharm., Inc.,*
    697 F.Supp.2d 1057 (D.Minn. 2010) ....................................................... 13

Statutes / Rules / Other

Fed. R. Civ. P. 23 ................................................................. 7

Fed. R. Civ. P. 30 ................................................................. 8

*4 Newberg on Class Actions § 11:41* ...................................... 6

*4 Newberg on Class Actions § 13:10* ...................................... 7

*Fed. Judicial Ctr. Manual for Complex Litig. § 30.42* ............... 15

## INDEX OF EXHIBITS

Exhibit 1:     The Settlement Agreement

Exhibit 2:     Declaration of James M. Parks

Plaintiff respectfully presents the Court with an agreement to settle the Class claims against Defendants on a nationwide, class basis.[1] The Settlement Agreement (attached hereto as Exhibit 1) is the product of well-informed, arm's-length settlement negotiations conducted after more than two years of litigation. The Settlement provides a fair and reasonable recovery to the Class and, if approved, will deliver tangible and immediate benefits to the Class. It is a good result for the Class, and is fair, reasonable, and adequate, particularly considering the risks of continued litigation. The Court should grant preliminary approval.

## I.     Procedural History and Settlement Overview

Plaintiff Patrick Ervin ("Ervin" or "Plaintiff") filed suit against Defendants TD Ameritrade, Inc., TD Ameritrade Clearing, Inc. and TD Ameritrade Holdings Corp. (collectively,' "TD Ameritrade" or "Defendants") in Missouri state court on February 19, 2020. Plaintiff alleged that TD Ameritrade breached its institutional client agreement, which Plaintiff asserted incorporated TD Ameritrade's Margin Handbook and the following language:

> There are also situations where investors receive "payments in lieu" of dividends on stocks a broker has borrowed as part of its securities lending practices, that do not qualify for the reduced rate. As TD Ameritrade, Inc. may borrow your dividend-paying stock in the normal course of business, you may receive a "payment in lieu" of dividends instead of a qualifying dividend. Should this occur, TD Ameritrade, Inc. will compensate your account, at its discretion, the difference between the long-term capital gains rate of 20% and the maximum 37% ordinary rate. We will also include the additional tax due on the difference (or a "gross-up"). We will calculate the gross-up as the difference between the 37% ordinary rate and the 20% capital gains rate divided by 63% - resulting in a premium payment of 26.9841% on the "payment in lieu."

Plaintiff alleged this paragraph promised account owners they would receive a premium payment whenever they received a payment in lieu of a qualifying dividend. Plaintiff alleged and

---

[1] The definitions in the Settlement Agreement are hereby incorporated as though fully set forth here, and capitalized terms shall have the meanings attributed to them in the Settlement Agreement

the evidence showed there were circumstances when an account holder received a payment in lieu of a qualifying dividend but did not receive a premium payment. Plaintiff sued TD Ameritrade for breach of contract, unjust enrichment, and declaratory judgment.

TD Ameritrade removed the case to federal court and, on May 11, 2020, filed a comprehensive motion to dismiss arguing that Plaintiff's claims were preempted by the Securities Litigation Uniform Standards Act (SLUSA), and that Plaintiff failed to adequately allege that the Margin Handbook formed part of the parties' contract or that TD Ameritrade's actions breached the institutional client agreement. Plaintiff opposed the motion and it was denied on August 28, 2020.

The parties have also engaged in extensive discovery. Plaintiff served two sets of requests for production of documents, two sets of interrogatories, three sets of requests for admission and deposed TD Ameritrade's corporate representative and another employee. Defendants also served written discovery and deposed the original Plaintiff in this action and the financial advisor hired by Plaintiff to manage the account. Regarding the requests for admission, on January 29, 2021, TD Ameritrade moved to withdraw its responses to certain admissions regarding whether securities had been loaned from Plaintiff's account. Plaintiff opposed the motion, but the motion was granted on March 4, 2021. TD Ameritrade subsequently amended its responses to deny securities had been loaned from Plaintiff's account.

After TD Ameritrade amended its responses to deny securities had been loaned from Plaintiff's account, Plaintiff sought and was granted leave to file a First Amended Complaint alleging that TD Ameritrade breached the institutional client agreement by making payments in lieu of qualifying dividends when securities had not been loaned out. Plaintiff filed the First

Amended Complaint on March 31, 2021.  On April 14, 2021, TD Ameritrade moved to dismiss this new claim.  Plaintiff opposed the motion.  The Court denied the motion on May 21, 2021.

The class certification process in this case involved hundreds of pages of briefing and exhibits filed over the course of close to ten months. Plaintiff first filed a motion for class certification on February 24, 2021.  The Court denied Plaintiff's first motion for class certification without prejudice on March 25, 2021, due to the briefing regarding the amended complaint.  Plaintiff filed a renewed motion for class certification on June 10, 2021.  Defendants filed an opposition on July 12, 2021, and Plaintiff filed a reply in support of the motion on August 9, 2021. On September 15, 2021, the Court indicated it generally favored certifying a class but invited supplemental briefing on the class definition, which the parties submitted. Plaintiff Patrick Ervin passed away on October 4, 2021.  Plaintiff's counsel moved to substitute Patrick Ervin's wife, Kathryn Ervin, as the new Plaintiff and proposed class representative.  On November 22, 2021, the Court granted Plaintiff's counsel's motion to substitute Kathryn Ervin as the new Plaintiff and proposed class representative.

On November 30, 2021, Plaintiff submitted a class definition that limited the class to institutional investors.  On December 13, 2021, the Court granted Plaintiff's motion for class certification. The Court certified a Premium Payment Class consisting of "[a]ll persons and entities who entered into an Institutional Client Agreement with TD Ameritrade and, during the time period February 19, 2015 through the present, received a substitute payment in lieu of a qualifying dividend without also receiving a premium payment." The Court also certified a case management subclass consisting of "[a]ll members of the Premium Payment Class who, as of the ex-dividend date for the qualifying dividend, had either a zero balance or a positive balance in their margin account."

After the class was certified, the parties engaged in settlement talks. The parties conducted extensive negotiations for several weeks. Before the terms were negotiated, Plaintiff had a thorough understanding of the composition of the Class and the nature of Defendants' anticipated defenses. Plaintiff considered the logistical and technical challenges surrounding her claims and the Defendants' defenses, as well as the costs associated with taking the case to trial. Plaintiff analyzed the Class's alleged damages with the assistance of consulting experts.

In sum, this case has been vigorously prosecuted and defended. The parties exchanged thousands of documents during discovery and filed hundreds of pages of briefing and exhibits with the Court. Armed with the information gained during the discovery process, and informed by the Court's prior rulings, the parties understand the costs and risks to both sides of proceeding to trial. The settlement they have arrived upon is better for the Class than the risks and expenses associated with continued litigation.

The parties have collaborated on the logistics and substance of the notice plan, and of the administration of this settlement. Counsel obtained a bid from a well-established, experienced, highly regarded class action notice and administration firm. The economical and efficient administration of the settlement is a necessity, given the number of Class Members and the damages involved. Plaintiff maximized the amount that would be available to the Class for payment of claims. Defendants agreed to cover the costs associated with the proposed notice and administration plan outlined in the Settlement Agreement. The plan the parties are proposing in the Settlement Agreement complies with all federal rules and with due process requirements, and is a material part of the settlement.

## II.    The Proposed Settlement

The Court-certified class consists of approximately 11,000 Class Members. In exchange for the Settlement's benefits, Class Members will release all claims arising out of the conduct by TD Ameritrade alleged in the Complaint or the First Amended Complaint in this action.

The Settlement provides for a non-reversionary cash fund of $1,400,000.00. All Class Members are eligible for payment. They will receive a payment equal to approximately 13.52% of the amount of substitute payments each Class Member received during the Class Period that were in lieu of qualifying dividends and for which the Class Member did not receive a premium payment. Any residual funds will be distributed to the Boys and Girls Clubs of America, a Section 501(c)(3) non-profit organization, for use in its financial literacy education programs.

The proposed Notice forms are attached to the Settlement Agreement as Exhibits B (Long Form Notice) and C (Summary Notice). A Summary Notice will be delivered via email and, failing that, by postcard through U.S. mail to each Class Member's last known address, or such updated address as the Settlement Administrator may identify. See Exhibit 1 (Settlement Agreement) at Section 4. A settlement website (www.ErvinSettlement.com) will communicate all important information, deadlines, and the Long Form Notice. The website will have relevant motions, orders, and pleadings available for download.[2] Additionally, a toll-free number and email will be made available for Class Members to contact the Settlement Administrator or Class Counsel directly.

The parties propose that Rust Consulting, an experienced and reputable national class action administrator, serve as Settlement Administrator, to provide notice, administer the opt-out

---

[2] The First Amended Complaint, the Renewed Motion for Class Certification, and the Order Granting Certification will be available for download.

and payment distribution processes, and provide other services necessary to implement the Settlement. Rust Consulting was selected after counsel considered proposals from various administrators. Under the proposed settlement, the costs of Notice in this matter will be borne by Defendants and will not be paid out of the cash fund for Class Members.

### III.    The Legal Standard

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. District. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F.Supp.2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11:41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Moreover, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *See e.g. Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (W.D. Mo. 2011); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-0413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this

settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

Parties to a class action may settle the claims of a certified class only with court approval. Fed. R. Civ. P. 23(e). The Court can approve a class settlement if it finds that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The settlement approval process typically occurs in three phases. "Step one is a preliminary, pre-notification determination as to whether the proposed settlement is 'within the range of possible approval.' If the court grants preliminary approval, step two is sending notice to the class describing the terms of the proposed settlement, at which time 'class members are given an opportunity to object or, in Rule 23(b)(3) class actions, opt out of the settlement. The court also holds a fairness hearing at which class members may appear and support or object to the settlement. At step three, the court decides whether to give final approval to the settlement, taking into account all of the information learned during the process." *Komoroski v. Utility Service Partners Private Label, Inc.*, No. 4:16-cv-00294-DGK, 2017 WL 3261030 (W.D. Mo. July 31, 2017) (Citing 4 Newberg on Class Actions 13:10).

Because preliminary approval is just the first step, courts apply a "less stringent" standard than at final approval. *Nieberding v. Barrette Outdoor Living, Inc.* 2015 WL 1645798, *4 (D. Kan. 2015). Pursuant to Rule 23(e)(1), the Court should preliminarily approve settlements when the parties make a showing that the court will likely be able to approve the proposal under Rule 23(e)(2).

### IV.     The Settlement Satisfies Rule 23(e)

Under Rule 23(e)(2), the factors that a Court considers when determining whether it is likely to approve a settlement, are whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

   (i)      the costs, risks, and delay of trial and appeal;

   (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

This case satisfies the four factors set forth in Rule 23(e)(2), as set forth below, and the Court should therefore grant preliminary approval.

### a. The Class Representative and Class Counsel have adequately represented the Class

The Class Representative and Class Counsel have adequately represented the Class. In February 2020, the original Plaintiff brought the case on behalf of himself and others similarly situated, for the time period from February 15, 2015 through the present.

The case was vigorously contested at every step of the process. To arrive at this settlement, the Plaintiff had to overcome two dispositive motions, multiple other non-dispositive motions, and opposition to a renewed motion for class certification. The briefing included complex questions of law about preemption, contract interpretation, and damages.

The discovery process included the production of thousands of documents, the deposition of Defendants' corporate representative under Fed. R. Civ. P. 30(b)(6), and the deposition of the

original Plaintiff, Patrick Ervin. Prior to his passing, Plaintiff Patrick Ervin actively participated in the litigation, responding to written discovery, and submitting to a deposition. Plaintiff Kathryn Ervin agreed to continue pushing the case forward once she took over for her husband. Plaintiff is not seeking a service payment nor any additional compensation, other than what would be owed to any other Class Member.

### b. The settlement was negotiated at arm's length

The settlement was fairly and honestly negotiated. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

Defendants disagreed with Plaintiffs' legal and factual positions at every step, including on several threshold issues such as preemption. Early efforts at resolution were unsuccessful. Mediation with an experienced mediator, Tom Bender, was unsuccessful, and the parties stopped negotiations entirely until after the Court's class certification ruling. Only after the Court's ruling were the parties able to agree on a settlement. Discussions regarding the proposed Settlement and its terms involved several weeks of back and forth negotiation. Defendants continue to assert that they are not subject to any liability, that they did not breach the client agreement, and that they have meritorious defenses that would enable them to ultimately prevail at trial as to all of the claims asserted by the class.

### c. The relief provided for the Class is adequate

This settlement provides significant relief to Class Members and compensates them fairly for their claims, particularly in light of the factors to be considered under Rule 23(e)(2)(C).

**1. The costs, risks, and delay of trial and appeal.**

The parties naturally dispute the strength of Plaintiff's case, and the Settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiff believes a best case scenario is a recovery on the merits of approximately two million dollars. Plaintiff's worst case scenario is that summary judgment is granted to Defendants or Plaintiff loses at trial, which would result in no recovery for the Class. Defendants have raised several defenses to the merits of the claims asserted in this action that create risk to the Class from further litigation, including whether the Margin Agreement forms part of the parties' contract and mandates that TD Ameritrade make a premium payment whenever an accountholder received a payment in lieu of a qualifying dividend. Even if the case proceeded to trial and Plaintiff prevailed on the question of liability, substantial questions may remain as to the measure of damages and the entitlement of each Class Member to recover. Further, several issues have been raised during the course of this action that could be subject to potential appeal.

Remaining discovery, summary judgment, trial, and appeal, would consume significant resources. Plaintiff would spend money on the litigation notice, travel, expensive expert witnesses, and other litigation costs, which would be borne by the class in any recovery.

Although Plaintiff believes strongly in the merits of the claims, the great number of uncertainties weigh in favor of a guaranteed resolution of the litigation. Settlement ensures that the Class will recover significant, immediate relief, for a substantial portion of their alleged losses, and compensation they may otherwise never receive.

## 2. The effectiveness of the proposed method of distributing relief to the class

The parties have agreed to retain Rust Consulting as Class Administrator. This company's qualifications and the proposed Notice Plan are outlined in the Declaration of James M. Parks on behalf of Rust Consulting, attached hereto as Exhibit 2.

Rust Consulting has extensive experience administering class actions, having serviced over 7,500 class action settlements, judgments, and similar administrative programs during its nearly 30-year history. Federal courts have entrusted Rust Consulting with administering nationwide settlement processes across the country.

For this case, the parties and the administrator have formulated a robust notice plan that encompasses several platforms, including email, U.S. Mail, and a website, designed to reach all Class Members through individual communications using last-known contact information obtained through what is, for most Class Members, an ongoing consumer relationship. This extensive notice plan is more than sufficient in a consumer class action like the instant case. *See, e.g.*, *In re Serzone Products Liability Litig.*, 231 F.R.D. 221, 236 (S.D. W.Va. 2005) (holding the notice plan designed to effectively reach approximately 80% of class members comports with the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) (approving a notice plan that was estimated to reach 81.4% of class members).

The Notice Plan will clearly inform Class Members of their rights to opt out or to object, and the mechanisms and deadlines for doing so, and will include all of the information required by Rule 23. The proposed long-form notice is attached to the Settlement Agreement as Exhibit B for the Court's consideration. It contains all of the information required by Rule 23, and it

closely tracks the model notice promulgated by the Federal Judicial Center ("FJC"), which is the education and research agency for the federal courts. Indeed, the FJC's illustrative notice that forms the basis for the proposed long-form notice in this case is recognized as the leading model for notice in class actions. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224 (D.N.J. 2005); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180, 185 (S.D.N.Y. 2003).

### 3. The proposed attorney's fees

Pursuant to the Settlement Agreement, Defendants have agreed not to object or oppose an application by Class Counsel for fees and expenses as long as the fees portion of the application does not exceed one third (33 1/3%) of the cash fund plus administrative expenses. The attorney fee award is scheduled to be distributed to Class Counsel within 30 days after the final approval of settlement and resolution of any appeal – only after all payments to Class Members have been determined, and any objections have been heard.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so. When a settlement yields a common fund for class members, fees must be paid from recovery. *Boeing Co. v. Van Gemert*, 444 U.S 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eighth Circuit, use of a percentage method of awarding attorneys' fees in a common fund case is not only approved, but also well established." *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See,*

*e.g., Johnson v. Comerica Mortg. Corp,* 83 F.3d 241, 245-47 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8ᵗʰ Cir. 2002); *In re Xcel Energy*, 364 F. Supp. 2d at 1993.

As the Eighth Circuit has recognized, using a percent of the fund approach most closely aligns the interest of the lawyers with the class, since the more that is recovered for the class, the more attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005); *In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002).

The amount sought by Class Counsel is well within the range approved by courts in the Eighth Circuit and in Missouri. "Courts in this Circuit and this District have frequently awarded attorney fees of 33 1/3% - 36% of a common fund." *Vogt v. State Farm Life Ins. Co.*, 2021 WL 247958 *2 (W.D. Mo. Jan. 25, 2021) (approving attorneys' fees equal to one-third of the common fund). *See also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable); *Huyer v. Buckley*, 849 F.3d 395, 399 (8ᵗʰ Cir. 2017) (describing an award of 38% as "on the high end of the typical range."); *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *4, (approving $18,331,500 fee, equal to one-third of common fund); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (finding $5,445,000 in attorneys' fees, representing 33% of settlement fund, to be in line with fees approved by Eighth Circuit).

Pursuant to the parties agreement, the common fund established for Class Members is

$1.4 million. This Settlement protects Class Members, and ensures an adequate recovery for each member. The costs of the settlement administration is estimated to be approximately $70,558, which as noted above will not be paid out of the common fund for Class Members and, if the costs of administration are higher than estimated, the recovery to Class Members will not be affected. It is appropriate for the Court to consider the costs of administration when calculating attorney fee awards. *In re Life Time Fitness, Inc.*, *Telephone Consumer Protection Act (TCPA) Litigation v. Life Time Fitness, Inc.*, 847 F.3d 619, 623 (8th Cir. 2017) ("[T]he district court did not abuse its discretion by including approximately $750,000 in fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount.") Therefore, Plaintiff will be applying for a class counsel fee award of $490,186, comprising one third (33 1/3%) of the common fund and estimated administrative expenses.

### 4. The proposal treats Class Members equitably

The proposed settlement provides each Class Member with an award that is calculated based on each Class Member's total substitute payments and an estimated difference in tax rates between substitute payments and qualified dividends for the overall class. The common fund of $1.4 million represents a significant recovery relative to the maximum $2.0 million that Plaintiff estimates she could recover at trial under her "best case" scenario and takes into account the expenses of continued litigation and the risk that the class recovery could be much lower or zero if Defendants were to prevail at trial or on appeal. Pursuant to the settlement, each Class Member's compensation is estimated to be approximately 13.52% of the amount of substitute payments the Class Member received during the Class Period that were in lieu of qualifying dividends and for which the Class Member did not receive a premium payment.

Resolving this case on a percentage basis for each Class Member that takes into account

each Class Member's individual amount of substitute payments is a great benefit to the class and is consistent with the calculation described in the TD Ameritrade Margin Handbook.

The Settlement treats Class Members consistently and fairly. No Class Members receive special treatment, including the Plaintiff who brought the lawsuit and is not asking for a service award.

### d. The experience and views of counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson v. Unilever Supply Chain, Inc.*, 10- cv-00775-FJG, 2011 WL 5822413, at *3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate).

In Class Counsel's view, the settlement provides substantial benefits to the Class Members; benefits they likely would not have ever received had this case not been brought. Especially when one considers the risk, difficulties, delays, and uncertainties of litigation, trial and post-trial proceedings, Class Counsel's view is that the settlement is an excellent outcome.

### VI. Conclusion

The Settlement presented is fair, reasonable, and adequate, given the legal hurdles that the Class still faces, and weighing the costs and benefits of continued litigation. Defendants have

vigorously contested this case from the beginning, and although Plaintiff has overcome more

than one dispositive motion based on the pleadings, were this case to proceed without settlement

Defendants believe that they would prevail on the merits, fully intend to assert their defenses to

both liability and damages if the case cannot be resolved, and have raised several potential issues

for appeal. Plaintiff respectfully requests that the Court preliminarily approve the Settlement as

provided in Exhibit 1, in whole and without delay. A proposed Order is submitted with this

Motion for the Court's consideration.

Dated: July 18, 2022     Respectfully submitted,

**BARTLE & MARCUS LLC**

By: /s/David L. Marcus_____
  David L. Marcus (MO Bar No. 47876)
  4700 Belleview, Suite 200
  Kansas City, Missouri 64112
  Telephone: 816-285-3888
  Facsimile: 816-222-0534
  Dmarcus@bmlawkc.com

**THE LAW OFFICE OF JARED A. ROSE**

Jared A. Rose, (MO Bar No. 60128)
919 West 47th Street
Kansas City, Missouri 64112
Telephone: (816) 221-4335
Facsimile: (816) 873-5406
E-mail: jared@roselawkc.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this July 18, 2022, I served a copy of the foregoing document via this Court's CM/ECF System to the following:

Jason M. Hans
GERMAN MAY PC
1201 Walnut Street, 20th Floor
Kansas City, MO 64106
jasonh@germanmay.com

Stephen G. Topetzes
Theodore L. Kornobis
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Stephen.topetzes@klgates.com
Ted.kornobis@klgates.com

*Attorneys for Defendants*

                         /s/ David L. Marcus_____
                         *Attorney for Plaintiff*